GEORGE C. HOLLISTER, Appellant, v. WILLIAM H. SIMONSON et al., Respondents, Impleaded with Others.

1. CONTRACT — RESCISSION — SPECIFIC PERFORMANCE. Under an agreement by which two parties entered into a joint venture in the purchase of real estate, the refusal by one of them, who had agreed so to do, to secure the execution of such documents on the purchase as should protect the interest of his co-purchaser and to make proper statements of account, and his procurement of a nominal sale of the property to others in bad faith without notice to the latter, is not a ground for the rescission of the agreement as if void from its inception and a recovery by the latter of all his money invested in the venture, in an action for an accounting and for damages, in the absence of a finding that he was induced to enter into the contract by fraud on the part of the defendant co-purchaser or that such defendant contemplated, at the time the contract was made, to prevent him from obtaining his fair share of the profits, if any should accrue from the joint venture, although such neglect and refusal of the defendant to secure such instruments as would protect the plaintiff, and his failure to furnish proper statements of account and his action in directing such sale of the property without notice to the plaintiff constituted breaches of defendant's agreement and violation of his obligations thereunder. The relief which equity affords the plaintiff is to require a sale of the property and a distribution of the avails thereof, over and above the incumbrances, between the parties in accordance with their several inter-

ests and an award to plaintiff as against the defendant for such damages as he had sustained by defendant's misconduct.

2. APPEAL — ERROR IN ENTRY OF JUDGMENT. An error of the Special Term in entering, on confirmation of a referee's report, a final judgment which fails to conform to the decision of the Appellate Division reversing in part and modifying so as to make interlocutory a final judgment previously entered by the court below, cannot be cured on appeal therefrom directly to the Court of Appeals, even if the determination of the Appellate Division be considered an affirmance of an interlocutory judgment within section 1336 of the Code of Civil Procedure, authorizing such an appeal where a final judgment is rendered in the court below after affirmance, upon appeal to the Appellate Division, of an interlocutory judgment, since such an appeal brings up for review only the determination of the Appellate Division affirming the interlocutory judgment; and the remedy of appellant is either in an appeal to the Appellate Division or in an application to the Special Term to enter such an order as the interlocutory judgment of the Appellate Division calls for.

3. DIRECT APPEAL FROM SPECIAL TERM TO COURT OF APPEALS. When the Appellate Division reverses part of a judgment and so modifies it in other respects as to make it an interlocutory judgment, the judgment thereafter rendered by the Special Term upon the report of a referee appointed under such interlocutory judgment is not appealable directly to the Court of Appeals, under section 1336 of the Code of Civil Procedure, authorizing such an appeal where a final judgment is rendered in the court below after affirmance, upon an appeal to the Appellate Division, of an interlocutory judgment.

*Hollister* v. *Simonson,* 36 App. Div. 63, appeal dismissed.

(Argued January 14, 1902; decided April 1, 1902.)

APPEAL from a judgment entered July 23, 1900, upon an order of the Appellate Division of the Supreme Court in the first judicial department, modifying a judgment in favor of plaintiff entered upon the report of a referee.

The facts found by the referee are substantially as follows:

Prior to December 14th, 1891, the defendant Simonson and one Luie F. Vorhis, respectively, had claims in the nature of mechanic's liens upon the real estate for an account of the rents and profits of which this action was brought. Hollister, the plaintiff, had an interest in the claim of said Vorhis.

Prior to said December 14th said Simonson and said Vorhis entered into a certain agreement which, in substance, provided that Simonson, with moneys furnished in part by himself and

in part by the proceeds of notes furnished by Hollister, should purchase said real estate at a sale under a foreclosure of mortgage then pending, said real estate to be thereafter sold and the proceeds applied, after payment of lawyer's fees and other expenses, to the payment of the claims and advances of Vorhis, Hollister and Simonson, the balance, if any, to be divided equally between Vorhis and Simonson. Part of the agreement between the parties was afterward reduced to writing, and was executed on January 6th, 1892. Prior to the foreclosure sale, which took place on December 14th, 1891, and at the time plaintiff advanced the first of the notes to carry out the common purpose, Simonson promised and agreed with plaintiff that the title in said premises should be taken in the name of a third person, as the representative of Simonson, and that Simonson would see that on such purchase such papers, agreement or deeds should be taken or executed as should properly protect the interest of plaintiff, of which interest Simonson then and there had notice. Defendant Thomas was selected by Simonson as such representative. The said notes were advanced by plaintiff in reliance upon the said undertaking and agreement of Simonson. The agreement of January 6th, 1892, was, at or about the time of its execution, duly assigned to the plaintiff as collateral security for advances made and to be made and for all indebtedness to the plaintiff by said Vorhis, of which assignment Simonson had due notice.

On March 3d, 1893, all the interest of Vorhis in said contract was assigned absolutely to plaintiff, of which assignment Simonson had due notice. In December, 1891, the referee on the foreclosure sale made, executed and delivered a deed of the said land and premises to the defendant Thomas, who at once entered into possession of said premises as representative of Simonson and continued in possession until the attempted sale in December, 1893.

During 1891, 1892 and 1893, pursuant to agreement, plaintiff and Simonson each advanced notes and moneys which were applied by Simonson, together with the rents of the

premises, to the payment of the principal and interest on certain mortgages on the premises, taxes, repairs and other expenses. Simonson failed and neglected to take any deed, agreement or paper from the purchaser, Thomas, adequate to protect the interest of plaintiff. Plaintiff on learning this, in the fall of 1893, repeatedly requested Simonson to carry out his agreement in that regard, which he neglected and refused to do. And during the fall of 1893 plaintiff repeatedly asked for a full statement of the accounts, but Simonson neglected and refused to furnish proper and adequate accounts of the receipts and disbursements and payments made in carrying the said property.

The last interview between the parties occurred on November 3d, 1893. At that time the plaintiff was not in default, but had fairly carried out the obligations on his part and was then ready and willing, and offered, in case Simonson would furnish the proper statement of accounts and would have such instruments executed with respect to such lands as would protect the plaintiff's interest, to advance or cause to be advanced any further moneys requisite on his part to carry out the joint undertaking. Simonson promised to make up such a statement of accounts for delivery to plaintiff, but he failed and neglected to do so. Before December 14th, 1893, Simonson directed the defendant Thomas to sell the premises. Neither Simonson nor Thomas took any steps to secure a favorable sale of the premises. Thomas sold the premises for an inadequate consideration to the defendant Washington Winsor, who on the same day transferred them for a nominal consideration to the defendant William H. Duckworth, an intimate friend of Simonson. Thomas, at Duckworth's request, continued in possession of the premises after the sale and collected the rents. The defendant Winsor made no examination of the title. He was introduced to Thomas by Duckworth.

Neither the defendant Winsor nor the defendant Duckworth were purchasers in good faith for value. Said sale was fraudulent and void and made at the direction of Simonson and in his interest, and the title to the property in fact

remains in Thomas, as the representative of Simonson. The refusal of Simonson to carry out his agreement to obtain such papers or instruments as were proper to protect the interest of the plaintiff in the premises, and his neglect and refusal to furnish proper statements of account and his action in directing a sale of the property without notice to the plaintiff, were breaches of his agreement and violations of his obligations to the plaintiff thereunder and amount to a repudiation by him of his contract.

No notice of the time or place of the sale was given to plaintiff by Simonson or Thomas.

*Franklin Pierce* for appellant. The judgment of the referee herein was by the order or judgment of the Appellate Division changed into an interlocutory judgment, and as an interlocutory judgment affirmed in the Appellate Division and a referee appointed to take the accounting; and from the final judgment entered upon the report of the referee, and from the final judgment at Special Term entered upon the report of the referee, an appeal can be taken directly to this court. Such appeal, however, brings up for review in this court only the correctness of the determination of the Appellate Division. (Code Civ. Pro. § 1336; *Raynor* v. *Raynor*, 94 N. Y. 248; *King* v. *Barnes*, 109 N. Y. 267; *Guibert* v. *Saunders*, 124 N. Y. 667; *Seymour* v. *S. F. C. Assn.*, 144 N. Y. 333; 4 App. Div. 364; *Rich* v. *M. Ry. Co.*, 150 N. Y. 542; *Ferguson* v. *Bruckman*, 157 N. Y. 688; *Stevens* v. *C. Nat. Bank*, 162 N. Y. 253; *Dodin* v. *Dodin*, 162 N. Y. 635; *Young* v. *Gilmour*, 167 N. Y. 500; *Catlin* v. *Grissler*, 57 N. Y. 363; *Swarthout* v. *Curtis*, 4 N. Y. 415.) The report of the referee must be regarded as a short decision, under the existing practice. (*Dr. D. K. Corp.* v. *Kennedy*, 165 N. Y. 360; *Amherst College* v. *Ritch*, 151 N. Y. 320; *Ver Planck* v. *Meneber*, 74 N. Y. 620; *People ex rel.* v. *M. R. R. Co.*, 152 N. Y. 417; *People* v. *Helmer*, 154 N. Y. 596; *People ex rel.* v. *Barker*, 155 N. Y. 324; *People ex rel.* v. *R. R. Comrs.*, 158 N. Y. 430; *Marden* v. *Dorthy*, 160 N. Y. 39; *Greene*

*v. Smith,* 160 N. Y. 533 ; *N. Y. L. Ins. & T. Co.* v. *Viele,* 161 N. Y. 11.) The right of the plaintiff to recover the money which he paid to Simonson in this joint venture, as money had and received, is, under the facts found by the referee and the law in this case, beyond question. (*Butler* v. *Prentiss,* 158 N. Y. 49 ; Story's Eq. Juris. § 187 ; *Mc Vity* v. *Stanton,* 10 Misc. Rep. 105 ; *Gale* v. *Gale,* 19 Barb. 249 ; *Youngs* v. *Carter,* 10 Hun, 197 ; *Lyon* v. *Tallmadge,* 14 Johns. 502 ; *Hammond* v. *Pennock,* 61 N. Y. 152 ; *Crome* v. *Lewin,* 95 N. Y. 423 ; *Ensign* v. *Colburn,* 11 Paige, 503 ; *Kountze* v. *Kennedy,* 147 N. Y. 129 ; *Hasberg* v. *McCarty,* 14 Daly, 414 ; 127 N. Y. 655 ; *Bradley* v. *Bradley,* 165 N. Y. 183.) Where two parties, either tenants in common or joint tenants, own property, and one of them assumes the exclusive right over it and sells it or converts it to his own use, the other can regard it as a repudiation of their relations, an abandonment in the nature of rescission, and can elect to rescind the whole relations between them and recover the money, that is, as money had and received. (*Knope* v. *Nunn,* 151 N. Y. 506 ; *Osborne* v. *Schenck,* 83 N. Y. 201 ; *King* v. *Meel,* 58 Am. St. Rep. 311 ; *Short* v. *Taylor,* 59 Am. St. Rep. 513 ; *Wing* v. *Milliken,* 64 Am. St. Rep. 238.) The sale of these premises by Mr. Simonson took away the only consideration for the payment of this money, and the money should be returned to Mr. Hollister upon the plainest principles of equity and fair dealing, because of a failure of consideration. (*Freer* v. *Denton,* 61 N. Y. 495 ; *Smith* v. *McCluskey,* 45 Barb. 610 ; *White* v. *Rodiman,* 44 App. Div. 503 ; *Sandage* v. *S. B. Mfg. Co.,* 51 Am. St. Rep. 165 ; *Foote* v. *Ffoulke,* 55 App. Div. 619 ; *Weaver* v. *Bentley,* 1 Caines, 47 ; *Ewing* v. *Wightman,* 167 N. Y. 107 ; *Flandrow* v. *Hammond,* 148 N. Y. 129 ; *Thomas* v. *Ruhl,* 30 Misc. Rep. 568 ; *Winter* v. *Livingston,* 13 Johns. 54.) The plaintiff is entitled to recover his money in this suit in equity upon the ground that he paid the money to the defendant upon a mistake as to a most material fact, namely, the actual taking of papers to secure his rights from Thomas, and relying upon the defendant's agreement that he would take

such a paper, and his representations made through Stuart that he had taken such a paper to protect the plaintiff's interests. (*Crane* v. *Lewin*, 95 N. Y. 423; *Kingston Bank* v. *Elting*, 40 N. Y. 391; *U. N. Bank of Troy* v. *S. Nat. Bank*, 43 N. Y. 452; *Lawrence* v. *Am. Nat. Bank*, 54 N. Y. 432; *White* v. *C. Nat. Bank*, 64 N. Y. 316; *Wilson* v. *Randall*, 67 N. Y. 338; *Sharkey* v. *Mansfield*, 90 N. Y. 227; *Duncan* v. *N. Y. Ins. Co.*, 138 N. Y. 88; *Haviland* v. *Willets*, 141 N. Y. 35; *Curtis* v. *Albee*, 167 N. Y. 365.) If any doubt or difficulty exists in this case, the equities are so overwhelmingly in favor of the plaintiff that they should be resolved in his favor. (*Harlow* v. *La Brum*, 82 Hun, 292; 151 N. Y. 278; *Barcus* v. *Darries*, 64 App. Div. 109; *P. R. Co.* v. *Goodyear*, 9 Wall. 788; *Farmers' L. & T. Co.* v. *N. Y. & N. R. Co.*, 150 N. Y. 431; *De Lavalette* v. *Shaw*, 11 J. & S. 13; *Bruce* v. *Kelley*, 7 J. & S. 27.) The referee on the accounting herein has found as a question of fact that the action of Simonson in selling these premises is a repudiation and abandonment of the contract, and Simonson having repudiated and abandoned the contract and rescinded the sale, to which rescission plaintiff assents, the Appellate Division has allowed Simonson to revive a rescinded contract, and given him affirmative relief thereunder. (*M. R. R. Co.* v. *O. R. Mills*, 10 Ont. App. 677; *Ketchum* v. *Evartson*, 13 Johns. 365; *Kiplinger* v. *Greene*, 28 N. W. Rep. 121; *P. B. Co.* v. *N. J. I. & S. Co.* 30 App. Div. 619; *Ewing* v. *Wightman*, 28 App. Div. 327; *Kinney* v. *Kiernan*, 49 N. Y. 164; *McCreery* v. *Day*, 119 N. Y. 5; *Roberge* v. *Winne*, 144 N. Y. 712; *Eveland* v. *Wheeler*, 37 N. Y. 248; *Meyer* v. *Glallach*, 2 Robt. 284; *Martin* v. *N. Y. L. Ins. Co.*, 73 Hun, 496; *De Klyn* v. *S. L. I. Co.*, 12 N. Y. Supp. 917.) There were no *laches* on the part of the plaintiff, no acquiescence on his part that in any way affects his right to maintain this suit upon the theory of the rescission of the contract, and collect back his money as money had and received. (*Powell* v. *Woodworth*, 46 Vt. 378; *Hathorne* v. *Hodges*, 28 N. Y. 490; *Schiffer* v. *Dietz*, 83 N. Y. 312;

*Vail* v. *Reynolds*, 118 N. Y. 297; *Duff* v. *Hutchinson*, 57 Hun, 152; *Kirby* v. *Harrison*, 59 Am. Dec. 683; *Dawes* v. *Harkness*, L. R. [10 C. P.] 166; *R. R. R. Co.* v. *Smith*, L. R. [4 E. & I. App.] 73; *Graham* v. *Holloway*, 4 Ill. 385; *Harrington* v. *Hubbard*, 33 Am. Dec. 426; *Houston* v. *Jordan*, 42 Miss. 38.) The relief given by the referee was just such relief as the plaintiff asked in his complaint and just such relief as the plaintiff was entitled to at the time of the trial of the action. (*Marquat* v. *Marquat*, 12 N. Y. 336; *Rogers* v. *N. Y. & Texas Land Co.*, 134 N. Y. 198; *Sherman* v. *Foster*, 158 N. Y. 593; *Mooney* v. *Byrne*, 163 N. Y. 87; *May* v. *Le Claire*, 78 U. S. 217; *Van Dusen* v. *Worrell*, 4 Abb. Ct. App. Dec. 473; *Miller* v. *McGuckin*, 15 Abb. [N. C.] 204; *Hart* v. *Ten Eyck*, 2 Johns. Ch. 62; *Enos* v. *Sutherland*, 11 Mich. 538; *Budd* v. *Van Orden*, 33 N. J. Eq. 143.) This court will not regard exceptions which do not affect the merits. (*Townsend* v. *Bell*, 167 N. Y. 463.)

*Edwin Countryman* and *Sidney H. Stuart* for respondents. The appeal should be dismissed. (Code Civ. Pro., §§ 1316, 1336; *Abbey* v. *Wheeler*, 58 App. Div. 452; *Goodsell* v. *W. U. T. Co.*, 109 N. Y. 147; *Benedict* v. *Arnoux*, 154 N. Y. 715, 725; Code Civ. Pro., § 1317; *Rich* v. *M. R. Co.*, 150 N. Y. 542; *Jones* v. *James*, 81 N. Y. 35; *Salmon* v. *Gedney*, 75 N. Y. 481; *Fisher* v. *Gould*, 81 N. Y. 228; *Van Horne* v. *Campbell*, 101 N. Y. 608; *Freel* v. *Queens County*, 154 N. Y. 661; *Matthews* v. *A. C. Ins. Co.*, 154 N. Y. 449.) The court erred in setting aside the sale made by Thomas to Winsor and by the latter to Duckworth. (*Hays* v. *Nourse*, 114 N. Y. 595; *Pope* v. *Allan*, 90 N. Y. 298; *Herdy* v. *Smith*, 49 Hun, 510; *Starin* v. *Kelly*, 88 N. Y. 418.) The property was sold at its fair market value. (*Walker* v. *Walker*, 3 Abb. [N. C.] 12.) The memorandum of agreement contains no provision as to any notice being given of any intention to sell, and the oral agreement between Simonson and Vorhis expressly dispensed with any notice.

A party is not entitled to notice unless he expressly stipulates for it, unless the necessity of notice springs from the nature of the contract itself. (2 Pars. on Cont. [4th ed.] 180.) The plaintiff failed to perform his part of the contract and to pay the balance of his one-half and the one-half of the amount due for interest. Simonson had the right to treat the contract as rescinded by Hollister. (2 Pars. on Cont. [4th ed.] 186, 189.) The alleged contract, being void under the Statute of Frauds, cannot be enforced directly or indirectly. ( *Wright* v. *Weeks,* 26 N. Y. 153 ; *Dung.* v. *Parker,* 52 N. Y. 494 ; *Wheeler* v. *Reynolds,* 66 N. Y. 227 ; *Sturtevant* v. *Sturtevant,* 20 N. Y. 39 ; *Smith* v. *Smith,* 125 N. Y. 224.) A trustee is only required to exercise such prudence and diligence in the discharge of his duties as in general men of average prudence and discretion would employ in their own affairs, and in determining this the facts as they existed are to be considered. (*Purdy* v. *Lynde,* 145 N. Y. 462.) The venture being a joint one, in which, beyond dispute, a large loss was suffered, it is submitted that, as the property was sold for more than its market or actual value, no right of any kind accrued to plaintiff. (*Mabbet* v. *White,* 12 N. Y. 443.) There having been no fraud or misrepresentation as an inducement to the agreement, and none at the inception of the contract, the plaintiff had no right to rescind the agreement to recover back the contributions of capital. (*Capen* v. *Barrows,* 1 Gray, 376 ; Story on Part. § 232.) The plaintiff has been guilty of *laches* sufficient to defeat his recovery upon the theory of a rescission of the contract. (*Schiffer* v. *Dietz,* 83 N. Y. 300.)

PARKER, Ch. J. The Appellate Division, rightly, as we think, reached the conclusion that plaintiff was not entitled to recover of the defendant Simonson all of the moneys that plaintiff had invested in the property which it was agreed should be managed for the benefit of both Simonson and the plaintiff, or his assignor. The referee, upon whose report the judgment reviewed by the Appellate Division was entered, did not find that plaintiff's assignor was induced to enter

into the contract by fraud on the part of Simonson, or that Simonson at that time contemplated defrauding him or in any wise preventing him from obtaining his fair share of the profits, if any should accrue from the venture in which both were to be jointly interested. But the referee did find, in effect, that subsequent to the purchase of the property at the foreclosure sale and the taking of title thereto by defendant Thomas, as was agreed, that Simonson refused to carry out his agreement to obtain such an instrument from Thomas as was proper to insure plaintiff that his interest in the premises was fully protected. And the referee also found that Simonson's neglect and refusal to secure such an instrument and to furnish proper statements of account and his action in directing a sale of the property without notice to plaintiff constituted breaches of Simonson's agreement and violations of his obligations thereunder.

At the time of such sale the plaintiff and Simonson had each invested many thousand dollars in the property beside the rents which had accrued, and while Simonson's course, according to the findings, was dishonest and entitled plaintiff to come into a court of equity, as he did, to obtain relief, the remedy to which he was entitled was not a recovery of his money, as if the contract had been void at its inception, but rather the aid of a court of equity in the enforcement of the contract according to its letter and spirit. Simonson had vested the title in one he could control, but he refused to furnish Hollister any assurance that he would so control him as to protect Hollister's rights in the property, and he refused to exhibit to Hollister a statement of the moneys expended upon the property so that he could form some conclusion as to what was the value of his interest in the property.

The relief which equity could afford him, as the Appellate Division correctly pointed out, was to require a sale of the property and a distribution of the avails, over and above the incumbrances between plaintiff and Simonson, in accordance with their several interests, and an award to plaintiff as against Simonson for such damages as he had sustained by

Simonson's misconduct. By this method it was intended to give plaintiff all the relief to which he was entitled, for under its working out plaintiff would be left in as good a situation as if Simonson had never undertaken to defraud him. And the Appellate Division so modified the judgment as to change it from a final into an interlocutory judgment by which was appointed a referee to take and state the accounts between the parties and to take proof of and allow plaintiff such damages, if any, as he had sustained by reason of the unjustifiable sale of the premises by Simonson. The judgment, as modified, further directed that upon the coming in of such referee's report a decree be made disposing of the copartnership property and finally determining the rights of the parties which were very clearly indicated in the opinion.

But the referee appointed to take the account and to determine the amount of damages to which plaintiff was entitled and the Special Term which entered judgment thereon seems not to have applied those equitable principles which guided the Appellate Division in its decision, for they called for an accounting between the parties, a sale of the property and a distribution of the proceeds thereof between plaintiff and Simonson according to the amount paid in by each as shown by such statement of account, together with such damages, if any, as plaintiff should have sustained by reason of the misconduct of Simonson. Instead of taking that course, the referee found that Simonson had paid out some $29,623.29 more than the plantiff, and that plaintiff had sustained no damage.

The Special Term confirmed the report and entered judgment thereon in favor of Simonson and against plaintiff for the sum reported, less some costs that the Appellate Division had adjudged plaintiff entitled to, and, in addition, the judgment awarded to Simonson $2,866 for costs and allowances. And the judgment made Simonson doubly assured of reaping the fruits of his fraud by providing that unless the plaintiff should, within ten days, pay to Simonson the difference between the respective amounts paid in by them, he should be, "and he hereby is foreclosed of any and all right, title or

interest in said property, or the proceeds thereof, and be, and he hereby is finally determined to have no right, title or interest therein or in any proceeds thereof."

And this decision was made notwithstanding the fact, as appears by the report of the referee upon whose findings of fact the interlocutory judgment rests, that plaintiff had invested in the property a sum which, with interest added, amounted on February 7th, 1898, to $27,659.07. No part of this amount, according to the judgment of the Special Term, should share in the proceeds of the property unless the plaintiff should within ten days pay the amount which that court adjudged to be his share of the expenses. This does not conform to the decision of the Appellate Division, and there is no view which can be taken of the facts in this record which can justify it.

The fact that it appeared upon the accounting that Simonson then had more money invested than plaintiff is not the controlling factor. The question is whether plaintiff was in default in November, 1893, after he had requested that Simonson carry out his agreement to obtain a deed or other writing from the purchaser adequate to protect plaintiff's interests, and also requested that Simonson furnish a statement of the receipts and disbursements, which requests Simonson wrongfully refused to accede to. With the title vested in another, with the certainty that only a suit in equity would preserve his rights and with no accurate information as to the amount of money put in by Simonson, plaintiff closed his last interview with Simonson on the 3d of November, 1893, and at that time, according to the finding of the referee, the plaintiff " was not in default, but had fairly carried out the obligations on his part and was then ready and willing, and offered, in case the defendant Simonson would furnish the proper statements of accounts and would have such instruments executed with respect to such lands and premises as would protect the plaintiff's interest, to advance or cause to be advanced any further moneys requisite on his part to carry out the joint undertaking." Instead of doing this, Simonson

caused the property to be sold in the following month, and by the purchaser conveyed to a grantee, who took the property at the request of Simonson and in his interest. And thereafter plaintiff was never in default, for the conduct of Simonson constituted a breach of the contract and the plaintiff was not called upon to proceed further.

It was his right then to resort to a court of equity for the relief, which it alone could give him, from the gross fraud which his associate in the venture, Simonson, had attempted to perpetrate upon him. And the judgment of the Special Term, therefore, instead of burdening the plaintiff with a judgment of costs and directing that he pay a specific sum of money to the man who had grossly wronged him, should have provided that upon the sale of the property the proceeds, over and above the incumbrances, should have been apportioned between plaintiff and Simonson according to the amount of their investments.

But we cannot cure that error in this court, even if it should be held that we have jurisdiction, for, the appeal having been taken directly from the judgment of the Special Term to this court, if the appeal be authorized we are, by the section authorizing it, limited to a review of the decision of the Appellate Division, with which we agree, and which does not authorize the judgment of the Special Term. The plaintiff's remedy for the error of the Special Term is either in an appeal to the Appellate Division or in an application to the Special Term to enter such a judgment as the interlocutory judgment of the Appellate Division called for, a situation which would be in no wise affected whether the disposition in this court be a dismissal of the appeal or an affirmance of the judgment, for, in the latter event, by operation of section 1336 of the Code of Civil Procedure, the order of the Appellate Division would be affirmed, not the hostile judgment of the Special Term.

We are, however, inclined to the view that this judgment is not appealable directly to this court from the Special

24

Term.   Section 1336 of the Code of Civil Procedure author-
izes such an appeal "where a final judgment is rendered in
the court below, after the affirmance, upon an appeal to the
Appellate Division of the Supreme Court, of an interlocutory
judgment."   In this case the original referee's report ordered
final judgment, and such a judgment was entered thereon.
The Appellate Division, instead of affirming that judgment,
reversed that part of it which gave the plaintiff a money
judgment against Simonson, and so modified the judgment in
other respects as to make it an interlocutory judgment.   It
cannot be said, therefore, that in this case an interlocutory
judgment of the Special Term was affirmed upon appeal to
the Appellate Division.

The appeal should be dismissed, but without costs.


BARTLETT, J. (dissenting).   I am unable to agree with the
disposition made of this case by the court.   I am of opinion
that the appeal taken from the Special Term directly to this
court under section 1336 of the Code of Civil Procedure is
regular.   The plaintiff tried his case before a referee and
secured a large money judgment against the defendant
Simonson.   From this final judgment of the Special Term
the defendant Simonson appealed to the Appellate Division,
where it was adjudged, among other things, that said final
judgment be made an interlocutory judgment, and as so
modified affirmed.   In pursuance of this interlocutory judg-
ment certain questions were sent to a referee, and on the
coming in of his report a final judgment against the plaintiff
was entered at the Special Term.   From this judgment the
plaintiff appealed directly to this court under section 1336 of
the Code, which provides that where a final judgment is
entered in the court below after the affirmance upon an appeal
to the Appellate Division of the Supreme Court of an inter-
locutory judgment, such an appeal may be taken.   It is true
that under the further provisions of this section we can only
review the determination of the Appellate Division affirming
the interlocutory judgment.   In other words, the questions

before us are, whether the Appellate Division was right in holding that the trial of this cause must proceed upon the theory that the plaintiff and defendant Simonson were partners, and the issues presented are those arising in ordinary accountings; also, the further question whether it was competent for the Appellate Division to transform a final judgment of the Special Term, awarding the plaintiff damages, into an interlocutory judgment which submitted to a new referee certain questions, some of which were involved in the trial resulting in said final judgment.

I agree with the prevailing opinion that the second final judgment of the Special Term from which this appeal is taken, entered upon the report of the referee appointed under the interlocutory judgment, is not here for review.

I also agree that the judgment from which this appeal is taken does not conform to the decision of the Appellate Division, and that the Special Term upon proper application should open the same and amend it according to the suggestions of this court.

Assuming that the appeal directly to this court from the Special Term judgment was properly taken, I am of opinion that the decision of the Appellate Division was erroneous on both of the points that are before us for review.

I agree with the learned referee that the moneys that plaintiff advanced were in the nature of trust moneys in the hands of the defendant Simonson, and that the latter, by means of a fraudulent and sham sale of the premises held by him in trust, so far as the plaintiff was concerned, attempted to appropriate the lands and proceeds to his own use, ignoring the rights of the plaintiff.

The referee did not err in holding the plaintiff had the right to elect that the agreement between himself and Simonson might be rescinded, or was abandoned, because of Simonson's fraudulent failure to perform his contract with the plaintiff and to discharge his duty as trustee in the premises.

The argument is advanced that there was no fraud in the

inception of this contract. A careful examination of the undisputed facts in this record, as it is now presented, satisfies me that, so far as the defendant Simonson is concerned, the contract was fraudulent in its inception and throughout.

The referee has found that the plaintiff, up to the time this action was commenced, was not in default under this contract. The referee also found that the conveyance of the title of these premises by Thomas, who was the representative of Simonson, to Winsor, in pursuance of the secret direction of Simonson, was fraudulent and void, and made at the suggestion or direction of Simonson.

It is expressly found that Simonson agreed to take this title in the name of a third person as his representative and to procure from said third person such papers, agreements or deeds as would properly protect the interests of the plaintiff, of which interest he (Simonson) then and there had notice.

It is found further that Simonson failed and neglected to perform this covenant in any way; also, that Simonson, although frequently requested, neglected and refused to render to the plaintiff sufficient or adequate statements of the accounts relative to the receipts, disbursements and payments made in carrying the premises in question. In other words, Simonson was to take these premises in trust for the plaintiff, protecting the latter by a proper conveyance or declaration of trust, and each were to make certain necessary advances in completing the buildings that were being erected thereon, and the property was to stand as security, not only for the original liens, but for the advances thus made. When the plaintiff ascertained that Simonson had failed to perform any of the covenants of this contract between them, he instituted this action, claiming to treat the contract as abandoned by Simonson and demanding a judgment against him for the amount of the liens and advances.

In view of these facts, it is clear that this contract was fraudulent in its inception, as it is undisputed that Simonson failed to perform on his part, beginning with the very first step, which was to take the title in the name of a third person

and procure such deeds and papers to be executed as would secure the plaintiff's rights in the premises.

It is said that while the secret, fraudulent and void conveyance made at the suggestion or direction of the defendant Simonson must be set aside, yet there is no direct finding of the referee that this contract was fraudulent in its inception. Under the facts disclosed this is not necessary, as the fraudulent action of Simonson, taken at the moment the plaintiff sought to protect his rights in a court of justice, characterizes the whole transaction, and it is a legitimate inference from the facts found that this entire scheme was originated by Simonson with fraudulent intent.

The referee reached the proper conclusion, and the Appellate Division should have affirmed the judgment entered upon his report.

I am also of opinion that the Appellate Division had no power to transform the final judgment in plaintiff's favor into an interlocutory judgment, and, as so modified, to affirm the same. If the Appellate Division were of opinion that the judgment entered upon the report of the referee was erroneous, that the legal principles upon which he proceeded were unsound, and that the plaintiff was not entitled to the money recovery which had been awarded him, the proper course was to have reversed the judgment and ordered a new trial.

It follows that the appeal is properly here, and that for the reasons stated the judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

GRAY, HAIGHT, MARTIN and VANN, JJ., concur with PARKER, Ch. J.; O'BRIEN, J., concurs with BARTLETT, J.

Appeal dismissed.