LOMMASSON, APPELLANT, *v.* HALL ET AL., RESPONDENTS.

(No. 8,093.)

(Submitted October 17, 1940. Decided October 28, 1940.)

[106 Pac. (2d) 1089.]

*Messrs. Pope, Smith & Smith,* for Appellant, submitted a brief; *Mr. A. K. Smith* argued the cause orally.

*Mr. Lloyd I. Wallace* and *Mr. E. M. Child,* for Respondents, submitted a brief.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought to rescind a partnership contract. The court sustained a general demurrer to the complaint. Plaintiff declined to plead further, and judgment was entered for the defendants, from which plaintiff appealed. The only question involved is the sufficiency of the complaint to state facts constituting a cause of action.

The contract sought to be rescinded was made on the first day of October, 1936, and its terms, briefly summarized, are the following: The defendants, husband and wife, agreed to execute a deed to the plaintiff of an undivided one-half interest in certain described real estate in Flathead county, together with certain machinery, equipment and personal property described in a written inventory attached to the contract. The

property was subject to a first mortgage in favor of the Home Owners' Loan Corporation in the sum of $7,787.01, which plaintiff assumed and agreed to pay. The parties agreed to engage in the business of raising and propagating silver foxes, and in certain agricultural pursuits as partners. The defendants jointly were to be treated as having an equal share in the control and conduct of the partnership affairs with the plaintiff. The defendants agreed to keep a true and accurate set of records, showing the cost of operation and other matters pertaining to the business, and that "annually on March first of each year an accounting and settlement shall be made between the parties." The profits were to be divided equally, one-half to defendants and the other half to plaintiff.

Defendant J. E. Hall under the terms of the contract had full charge and control of all of the operations and management of the fox raising department and of the business affairs of the partnership, with authority to employ men and to develop a "dude ranch" business. He had charge of the selling of foxes for breeding purposes and of fox pelt and other fur products. The cost of selling made-up furs of all kinds and of breeding stock, including office and clerical help, advertising and selling and sale commissions it was stipulated should not exceed one-third of the gross income from such sales.

Hall agreed to see to it that the work was done seasonably and in good and workmanlike manner. Defendants were to receive no salary but were provided a joint allowance of $50 per month as living expenses for the first two years and five months. On and after December 31, 1938, they were to receive a joint monthly salary to range between $25 and $125 per month, depending upon the financial condition of the partnership, and this was to be paid only upon the written approval of plaintiff. After defendants were placed on a salary basis, the allowance for living expenses should terminate.

It was stipulated that all running expenses, excepting feed for the foxes and livestock, should not exceed $650 per year, without the consent of plaintiff in writing, and that the cost of feed for the foxes should not exceed $20 per pair per year.

It was agreed, also, that the defendants might reside in the main residence on the premises without the payment of rent unless it might be rented for $250 a month, or more, for at least three consecutive months of the year. The contract contained this paragraph: "In event party of the second part [plaintiff] fails, neglects or refuses to make mortgage loan payments for a period of six months then and in that event this agreement shall terminate and parties of the first part [defendants] shall become the sole owners thereof and any sums that party of the second part has paid into said business or applied on said mortgage shall be returned to him at the rate of $1,000.00 per year, plus six per cent interest per annum, during the time the same has been invested, minus whatever dividends or payments he shall have received out of said business, and it is further agreed that should party of the second part become disabled or otherwise unable to continue with said payments as in this agreement provided, he may then, upon registered mail notice to parties of the first part, withdraw from said partnership and all sums paid out by him on account of said mortgage or into said business shall be returned to him at the rate of $1,000.00 per year, plus six per cent per annum interest from the time the said sums have been invested or advanced."

The complaint alleges, in substance, that no profits or dividends have ever been received by plaintiff under the agreement; that when the contract was made he had full faith and confidence in the defendants, and, particularly, in the defendant J. E. Hall, but that now he has lost all faith, confidence and trust in them. It alleges that plaintiff has performed all of the obligations imposed upon him by the agreement and has paid to the Home Owners' Loan Corporation, during the years of 1936 to 1939, inclusive, the sum of $3,370.59, and has advanced to the partnership for operating expenses during the years of 1936 and 1937, the sum of $961.90; that on November 25, 1939, plaintiff made a written offer to rescind the contract by restoring to defendants everything of value which he had received from them under the agreement upon condition that they would return to him everything of value paid for their benefit under

the agreement and received by them from him, and that defendants refused to make restoration. It is alleged that plaintiff's offer to restore was made promptly and with reasonable diligence upon discovering the facts which gave rise to his right to rescind, which facts and the time of their discovery are the following: That during the months of September, October and the first week of November, 1939, plaintiff made several trips to the ranch near Somers, where the partnership is carried on, for the purpose of examining the books of account of the partnership; that upon this examination plaintiff discovered that defendants had breached the partnership agreement in the following particulars:

1. That they failed to keep a true and accurate set of records pertaining to the partnership business;

2. That defendant J. E. Hall had failed faithfully and conscientiously to supervise and look after the management of the partnership business;

3. That defendant Hall sold and gave away foxes, fox pelts and other fox fur products without accounting to the partnership therefor;

4. That since December 31, 1938, the defendants have been withdrawing from partnership moneys a joint monthly salary in the sum of $50 per month without the written approval of the plaintiff;

5. That defendants agreed to deliver thirty pairs of foxes to the partnership upon the execution of the partnership agreement, but only delivered twenty-eight pairs;

6. That defendants have incurred partnership debts or expended from partnership moneys more than $650 a year for the running expenses without the written consent of plaintiff, and that the cost of feed for the foxes has exceeded $20 per pair;

7. That in the year 1937, the defendants rented the main residence upon the partnership premises for a period less than three months, and more than one month, for less than $250 per month;

8. That defendants have failed and refused to pay their pro rata share of the taxes for the year 1936;

9. That within the period of six months prior to the institution of the action, defendant Hall has refused to disclose to plaintiff many of the business affairs of the partnership, and has refused to permit the plaintiff to inspect the books and records until they could be worked over;

10. That defendants have refused to accede to many of the requests of the plaintiff with respect to the operation of the partnership business.

The complaint alleges that plaintiff has deposited with the clerk of the court a deed to the real estate received by him from defendants and a bill of sale to all of the personal property. The complaint asks that defendants be ordered to return to plaintiff the sum of $4,332.49, and that the clerk of the court be authorized to deliver the deed and bill of sale to defendants and, upon defendants' failure to pay the amount, that the plaintiff have judgment against them in that amount.

It will be noted that the agreement in question has as its purpose two main objectives. The first was the creation of a partnership relation between plaintiff and the defendants. The second objective was to define the duties and obligations of each partner in the conduct of the partnership business. The creation of the partnership relationship was accomplished by the transfer by defendants of a one-half interest in the property used in the partnership business upon consideration that plaintiff assume and pay the mortgage to the Home Owners' Loan Corporation. So far as it created the partnership relationship, the contract was fully executed, except, perhaps, as it was affected by the failure of defendants to deliver thirty instead of only twenty-eight pairs of foxes, a point we shall hereinafter discuss more at length.

The main point argued in the briefs of counsel is whether a partnership contract may be rescinded. Defendants take the position that plaintiff's remedy, if any he has, is for an accounting and dissolution. They rely upon the case of *Hollister* v. *Simonson*, 36 App. Div. 63, 55 N. Y. Supp. 372, appeal dis-

missed 170 N. Y. 357, 63 N. E. 342, and *Proctor & Gamble* v. *Powelson,* (2 Cir.) 288 Fed. 299, and others of like import. Plaintiff, on the other hand, contends that section 7565, Revised Codes 1935, is broad enough to permit the rescission of a partnership contract. That section in part provides: "A party to a contract may rescind the same in the following cases only: * * * 2. If, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part."

It may be conceded that ordinarily this statute permits of the rescission of a partnership contract. However, we believe that that section does not permit the rescission of the contract in this instance. To the extent that the contract created the partnership relationship there was no failure of consideration, in whole or in part, unless it be with reference to the two pairs of foxes—a point we shall hereafter allude to further. As to all other breaches relied upon, they had to do with covenants relating to the manner of carrying out the partnership business. Their breach did not give rise to the right to rescind the contract so far as it created the partnership relationship. The situation, so far as the right to rescind is concerned, is akin to that arising from a marriage contract. A marriage contract may be annulled or rescinded for causes affecting the voluntary consent existing at the inception of the contract. (Sec. 5729, Rev. Codes.) But for failure to perform the marital duties and obligations after the marital relationship is once established, the remedy is dissolution, and not annulment or rescission. So with the partnership status. When it was established by the voluntary acts of the parties, it was not subject to rescission for failure to carry out the duties and obligations incident to conducting the partnership business. In effect, this is the holding in the case of *Proctor & Gamble* v. *Powelson,* supra.

All the acts relied upon by the plaintiff for rescission of the contract (save the failure to deliver thirty pairs of foxes) constitute merely breaches of covenants to be performed in carrying out the partnership business, after the relationship was established. Their breach did not give rise to the remedy of

rescission so as to annul the existence of the partnership *ab initio*. To uphold plaintiff's contention we would be obliged to rule that, though the contract might have been carried on faithfully for a number of years, the mere failure to perform one of these covenants the succeeding year would give rise to the remedy of annulling the partnership *ab initio*. This we think cannot be done.

So far as section 7565, supra, has application to a partnership contract, it permits rescission only when there has been a failure of consideration, in whole or in part, in the creation of the partnership relation at its inception, and does not permit of a rescission so as to annul the partnership for breach of a covenant arising in the conduct of the partnership business.

We, then, come to the question of the failure of defendants to deliver two pairs of foxes to make the thirty pairs called for by the contract.

Under section 7567, Revised Codes, it is provided: "Rescission, when not effected by consent, can be accomplished only by the use on the part of the party rescinding, of reasonable diligence to comply with the following rules: 1. He must rescind promptly, upon discovering the facts which entitle him to rescind, if he is free from duress, menace, undue influence, or disability, and is aware of his right to rescind," etc. Here the complaint shows on its face that plaintiff knew of the defendants' failure to deliver thirty pairs of foxes to the partnership. It alleged that the defendants "repeatedly and continuously refused to deliver the two additional pairs." Hence it is apparent that plaintiff knew of the defendants' failure to deliver the thirty pairs of foxes, otherwise he would not have alleged that defendants repeatedly and continuously refused to deliver them. This allegation implies that plaintiff knew of defendants' failure in this respect, but, instead of acting promptly to rescind on that ground, chose to affirm the contract by repeatedly requesting compliance with it in that respect. In other words, the only way defendants could repeatedly refuse to deliver the two pairs of foxes as alleged, would be by refusing to comply with repeated requests that delivery be made.

When laches appears from the face of the complaint, the complaint is subject to demurrer. (*Ott* v. *Pace,* 43 Mont. 82, 115 Pac. 37; and see, generally, *Lasby* v. *Burgess,* 88 Mont. 49, 289 Pac. 1028.)

The district court properly sustained the demurrer. The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ERICKSON concur.

MR. JUSTICE ARNOLD, being disqualified, takes no part in the above decision.