The complainant Samatula is the owner of a tract of land on Locust Avenue, in the Borough of Wallington. The plot is slightly irregular but, for the purposes of this discussion, may be regarded as being 75 feet wide by 100 feet in depth. On the southwesterly side of the property there is a building which occupies 24 feet of the width of the lot; the balance of 51 feet is vacant. This building has a store in front and living quarters in the rear which are occupied by the complainant. There is no inside passage between the living rooms and the store. To reach the street, complainant must leave his quarters by a door in the side of the building and pass along a rough path to the street.
The complainant is a native of Poland. He has been in this country since 1909, but like so many people of foreign birth, he has failed to master the English language. He speaks English with difficulty and neither reads nor writes the langauge.
Early in March of 1946, Piechota, the defendant, approached Samatula with an offer to purchase the entire tract. The offer was refused. Defendant then proposed the purchase of the vacant lot. After some discussion, Samatula agreed to sell the vacant land with the exception of a driveway next to the building. The defendant offered $3,000. Samatula asked $3,500. They agreed on $3,200 as the purchase price. Defendant had prepared a written statement of the terms of sale and an acknowledgment by Samatula of the receipt of a deposit of $200. The dimensions of the tract were stated to be 40 x 100 together with the use in common of a 10 foot driveway. Samatula signed the receipt and agreed to go next day with the defendant to the office of Samatula's lawyer, Mr. Silski, for the purpose of having drawn a formal contract. *Page 322 
On the way to Silski's office, according to Samatula's story, Piechota asked Samatula to tell the lawyer that the purchase price was $2,000 instead of $3,200. Piechota said that he did not want the lawyer or the tax assessor to learn how much he was paying for the property. Piechota assured Samatula that he had with him a $1,200 check which he would give to Samatula immediately after the signing of the contract. Samatula agreed. Samatula's story is corroborated by the testimony of his wife and daughter, both of whom accompanied the parties to Silski's office.
Silski, upon Samatula's instructions, put in the contract the figure $2,000 as the purchase price. When it came to the description of the premises to be conveyed, Silski pointed out that if the plot to be conveyed was 40 feet in width, the only way Samatula could reach the street from his quarters would be by the driveway. After some discussion during which Samatula offered to cancel the agreement, it was decided that the plot should be 38.5 feet wide and the driveway nine feet wide. By this arrangement Samatula was assured of a 3.5 foot path beside his house.
After leaving Silski's office the parties returned to Samatula's house where Samatula asked for the $1,200. Piechota said that the check he had was incorrect and that he would get a new one. He left and did not return.
When Piechota failed to return, Samatula became worried. He went to Silski's office and told the lawyer the whole story. Silski testified that he sent for Piechota, who came to his office. During the course of the visit, Piechota admitted that Samatula's statement concerning the consideration for the contract was correct. He told Silski that he was arranging for the immediate payment of the $1,200 to Samatula. Piechota asked for and obtained a copy of the contract in order, as he said, to have a survey made. The next day Silski again contacted Piechota and again was assured that Samatula would be paid. However, the next step was a demand from Piechota's lawyer that the property be conveyed for the price of $2,000 as stated in the contract. Thereupon, this bill for rescission was filed.
Piechota denied Samatula's story but his denial was not *Page 323 
impressive. According to Piechota, Samatula was greatly troubled when he learned that the conveyance of a plot 40 feet in width would deprive him of a sidewalk. Piechota testified that Samatula came to his home and offered to reduce the purchase price $1,200 if Piechota would relinquish his claim to 2.5 feet of the plot. I do not believe Piechota. Samatula was not anxious to convey the property. Several times during the negotiations he offered to cancel the arrangements. It is absurd to suggest that Samatula would sacrifice better than one-third of the purchase price merely because he wanted a pathway beside his home. Even had the deal gone through as originally planned, Samatula would have had access to the street by way of the driveway.
I am of the opinion that the story told by Samatula and his witnesses was true. I do not believe that the purchase price was ever intended to be other than $3,200. The discussion in the lawyer's office concerning the driveway had no bearing on the price of the property. All of the witnesses testified to the argument concerning the dimensions of the property. If, as Piechota testified, Samatula had already agreed to a reduction in price in return for a change in the dimensions of the plot, there would have been no need for any discussion.
Piechota never intended to pay the additional $1,200. By false representations Piechota induced Samatula to sign a contract which did not embody the true understanding of the parties. This accomplished, Piechota endeavored to capitalize on his own fraudulent conduct.
To enforce the contract according to its express terms would be to give life to a fraud. One of the most salutory remedial functions of a court of equity is to relieve against the consequences of fraud. When a written contract is involved, parol evidence is always admissible to establish the basis for equitable interposition. Downs v. Jersey Central Power andLight Co., 117 N.J. Eq. 138.
A representation of an intention is a representation of an existing fact. Where the representation amounts to an affirmation of a present state of mind, as distinguished from a mere promise collateral to the contract, it will, if false, avoid *Page 324 
a contract induced thereby. Roberts v. James, 83 N.J. Law 492;Zuckerman v. Geller, 103 N.J. Eq. 145. The representations made by Piechota, relied upon by Samatula, resulted in the execution of the contract in its present form. The representations were false and the contract induced thereby will be avoided.
I will advise a decree rescinding the contract.