260 N.J. Super. 190 (1992)
615 A.2d 676
NOTCH VIEW ASSOCIATES, A.D.S. ASSOCIATES, ALBERT SPRING, MURRAY ABILL, FRED ABILL, AND MILTON SCOTT, PLAINTIFFS,
v.
DEAN SMITH AND JOSEPH DIDONNA, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided September 1, 1992.
*195 Russell M. Woods, argued for plaintiffs (Woods & Trembulak, attorneys).
Christopher J. Koller, argued for defendant Smith (Rosner & Feldman, attorneys).
FUENTES, J.S.C.
The individual plaintiffs and defendants in this case are partners in a real estate project to develop three office condominium buildings. Plaintiffs instituted this action seeking, among other things, declaratory relief and rescission of the partnership agreement as it relates to defendant Dean Smith and the distribution of partnership profits owed to Smith.
The allegations against Smith include charges that he was given a partnership interest based upon false representations as to his qualifications and future contributions to the partnership. He is also charged with failing to deliver promised performance and various breaches of fiduciary duties.
Smith has filed a motion for partial summary judgment to compel release of his undistributed share of the partnership profits. His principal contention is that he breached no duty to the partnership and, in any event, plaintiffs should be estopped from seeking rescission because for nearly two years they purposefully delayed commencing this action despite knowledge of his alleged wrongdoing.
In the circumstances of this case, I conclude that plaintiffs are not entitled to rescission of the partnership agreement and defendant's motion to compel distribution of his partnership profits is granted.

I.
These are the undisputed facts. In May of 1981 the individual plaintiffs formed a partnership under the name of A.D.S. Associates to develop approximately four acres of land in Clifton for office condominium buildings. In the following *196 September, A.D.S. joined with All American Life, a wholly-owned subsidiary of U.S. Life, to form Notch View Associates to further develop the property. The agreement was signed on behalf of U.S. Life by its then vice president, Dean Smith. The terms of the agreement required All American Life to provide financing for construction of three buildings. Each building was to have about 20 units. Construction of the first building began before Smith became involved with the partnership. During the construction and financing of this building, the partnership dealt with Smith on numerous occasions.
In 1983, Smith left U.S. Life to form a real estate consulting company. By 1985, U.S. Life was seeking to terminate its holdings in the development project and refused to provide further financing for the remaining two buildings. As a result, the project was completely stalled. Smith became aware of this dispute and offered to negotiate a resolution on behalf of the partnership. The partnership agreed to admit Smith as a partner provided that he negotiate with U.S. Life to secure subsequent construction loans and assist prospective buyers in obtaining purchase loans. To get additional financing for further construction, the partnership needed to sell out the last four units of the first building. Sale of these units would satisfy the deal A.D.S. struck with U.S. Life in 1981 for construction financing.
Accordingly, A.D.S. formed a new concern named SASSA Associates to purchase the remaining four units. Dean Smith was asked to locate financing for the acquisition of these partnership units. Smith located a willing lender for these units, and construction financing for the second building was thus obtained. During the same period, and before Smith became a partner, All-American Life sold its interest in the project to the partnership.
Shortly thereafter, by agreement dated January 1, 1986, Dean Smith became a partner in A.D.S. The agreement provided in part that:

*197 1) For and in consideration of a capital contribution of $6,000.00 paid to A.D.S. Associates, receipt whereof is hereby acknowledged, Murray Abill, Fred Abill, Milton Scott and Albert Spring hereby covenant and agree that Dean M. Smith shall become a partner in A.D.S. Associates and shall have a 20% interest in the profits and losses of said partnership.
2) Dean Smith acknowledges that he has been provided with a copy of the original partnership Agreement, has endorsed the same and shall be bound by all terms and conditions of the Agreement as though he were an original party thereto.
From 1987 through 1989, A.D.S. made five separate partnership distributions to Smith totalling $238,200. Then, on April 17, 1989, plaintiffs commenced this action seeking a rescission of Smith's partnership interest and his subsequent profits which now amount to about $350,000. Plaintiffs' specific grounds for rescission rest on failure of consideration, misrepresentation as to future performance, and fraud.

II.
Under principles of contract law, rescission is an equitable remedy and only available in limited circumstances. Hilton Hotels Corp. v. Piper Co., 214 N.J. Super. 328, 336, 519 A.2d 368 (Ch.Div. 1986). Ordinarily, contracts may only be rescinded where there is original invalidity, fraud, failure of consideration or a material breach. 17A Am.Jur.2d, Contracts § 539, 567. See Herbtstman v. Eastman Kodak Co., 68 N.J. 1, 9, 342 A.2d 181 (1975); Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 130, 179 A.2d 505 (1962); Giumarra v. Harrington Heights, 33 N.J. Super. 178, 190, 109 A.2d 695 (App.Div. 1955), aff'd 18 N.J. 548, 114 A.2d 720. And even where the grounds for rescission exist, the remedy is discretionary and will not be granted where the claimant has not acted within a reasonable time or where there has been substantial performance. Hilton Hotels Corp. v. Piper Co, supra, 214 N.J. Super. at 336, 519 A.2d 368. Jones v. Gabrielan, 52 N.J. Super. 563, 576, 146 A.2d 495 (App.Div. 1958). Moreover, to grant rescission, the court must be able to return the parties to their original position. Ibid; Driscoll v. Burlington Bridge Co., 28 N.J. Super. 1, 4, 99 *198 A.2d 829 (App.Div. 1953). Although this is not an absolute requirement, it should be done in so far as practicable. Amer. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 334, 268 A.2d 313 (App.Div. 1970) (citing Doughten v. Camden Building and Loan Association, 41 N.J. Eq. 556, 561, 7 A. 479 (E. & A. 1886).
Under principles of partnership law the remedy of rescission is even more circumscribed. Generally, the relationship of co-partners as fiduciaries is "one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." Stark v. Reingold, 18 N.J. 251, 261, 113 A.2d 679 (1955); Latta v. Kilbourn, 150 U.S. 524, 14 S.Ct. 201, 37 L.Ed. 1169 (1893) Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 499, 144 A.2d 207 (App.Div. 1958); Neustadter v. United Exposition Service Co., 14 N.J. Super. 484, 493, 82 A.2d 476 (Ch.Div. 1952). Ordinarily, one partner may not sue another at law unless there is a prior accounting or settlement of partnership affairs. O'Toole v. O'Toole, 10 N.J. Misc. 159, 165, 158 A. 337 (Sup.Ct. 1932); Newburger, Loeb & Co., Inc. v. Gross, 563 F.2d 1057, 1075 n. 23 (2d Cir.1977), cert. denied., 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978); 59A Am.Jur.2d Partnership § 542 (1987); See Annotation, Actions at Law Between Partner and Partnership, 168 A.L.R. 1088 (1947).
Exceptions to this rule arise in cases where one partner sues another based on wrongful dissolution, breach of independent covenants in the partnership agreement or where the facts are such that no complex accounting of partnership transactions is necessary. Id. at 1098; 59A Am.Jur.2d Partnership § 560 (1987); Stodd v. Goldberger, 73 Cal. App.3d 827, 838, 141 Cal. Rptr. 67, 74, (1977); Burnstine v. Geist, 257 A.D. 792, 793, 15 N.Y.S.2d 48, 50 (App.Div. 1939). This rule is based on the recognition that equitable relief may be necessary to protect the rights of the parties and court intervention may not be appropriate until the relative rights of the parties are established. Bassett v. American Meter Co., 20 A.D.2d 956, *199 957, 249 N.Y.S.2d 815, 816 (App.Div. 1964); Crane & Bromberg, Law of Partnership § 69 (1968). If partners are unable to settle their own affairs, an action in equity for an accounting may be appropriate, and sometimes it represents the exclusive remedy to adjust and settle the affairs of a partnership. Condon v. Moran, 11 N.J. Super. 221, 78 A.2d 295 (App.Div. 1951); Watts v. Adler, 130 N.Y. 646, 648, 29 N.E. 131 (1891). Thus, while breaches of the partnership agreement may give rise to damages, they are ordinarily insufficient to warrant rescission absent a breach of fiduciary duty or fraud. 59A Am.Jur.2d Partnership §§ 610, 560 (1987); 68 C.J.S. Partnership § 13 (1950).
New Jersey's Uniform Partnership Law expressly recognizes rescission on the ground of fraud or misrepresentation. N.J.S.A. 42:1-39. Despite this statutory authority, my research discloses no reported New Jersey decision granting rescission of a partnership agreement. Other jurisdictions have granted rescission of partnership compacts where fraud, misrepresentation, failure of consideration or breach of fiduciary duty has been shown. Oteri v. Scalzo, 145 U.S. 578, 588, 12 S.Ct. 895, 898, 36 L.Ed. 824, 827 (1892) (fraud in the inducement); Brooks v. Martin, 69 U.S. (2 Wall.) 70, 89, 17 L.Ed. 732 (1864) (setting aside fraudulent contract of sale); Elias v. Handler, 155 A.D.2d 583, 584, 548 N.Y.S.2d 33, 34 (App.Div. 1989) (allegations of fraud sufficient to state claim for rescission); Harlow v. La Brum, 151 N.Y. 278, 279, 45 N.E. 859, 860 (1897) (misrepresentations sufficient basis for rescission); Long v. Newlin, 144 Cal. App.2d 509, 512, 301 P.2d 271, 273 (1956) (fraud in the inducement); Johnson v. Buck, 540 S.W.2d 393, 399 (Tex.Civ. App. 1976) (rescission based on fraud); Ferguson v. Jeanes, 27 Wash. App. 558, 564, 619 P.2d 369, 373 (1980) (rescission based on undue influence); W.A. McMichael v. D & W Properties, 356 So.2d 1115, 1125 (La. Ct. App. 1978) (transaction set aside based on breach of fiduciary duty); Hanes v. Giambrone, 14 Ohio App.3d 400, 471 N.E.2d 801, 807 (1984) (fraud in the inducement); Beals v. Tri-B Assoc., 644 P.2d 78, 80 (Colo.Ct.App. *200 1982) (mutual mistake); Volpe v. Schlobohm, 614 S.W.2d 615 (Tex. Ct. App. 1981) (mutual mistake as to fundamental purpose); Lommasson v. Hall, 111 Mont. 142, 150, 106 P.2d 1089, 1092 (1940) (failure of consideration); 59A Am.Jur.2d Partnership §§ 613, 614 (1987); See J.F. Ghent, Annotation, Partner's Breach of Fiduciary Duty To Copartner On Sale Of Partnership Interest To Another Partner, 4 A.L.R.4th 1122 (1981) (self-dealing). In one New Jersey case, Arnold v. Hagerman, the court discussed rescission as an option to set aside a fraudulent transaction rather than the entire agreement where a non-defaulting partner acts promptly. 45 N.J. Eq. 186, 196 (E. & A. 1888).
The persistent thread running through these cases is that rescission has been commonly applied in setting aside particular transactions, but is rarely used to rescind a partnership agreement unless a partner's conduct substantially impairs the basic purpose of the partnership. In other words, conduct which is so pervasive and detrimental to the partnership entity as to undermine the reason for which it was formed, may provide sufficient grounds for rescission.
A number of cases illustrate the limits of rescission in partnership agreements. In Hollister v. Simonson, 36 A.D. 63, 65, 55 N.Y.S. 372, 374 (App.Div. 1899), appeal dismissed, 170 N.Y. 357, 63 N.E. 342 (1923) the court stated:
[w]e have been unable to find any rule established by which because of the misconduct of a partner, his co-partner can rescind the agreement of co-partnership and recover back his contribution of capital unless such misconduct consisted of gross fraud or misrepresentation by which the plaintiff has been induced to enter into co-partnership, so that there was fraud at the inception of the contract. [The] proper remedy is accounting where the plaintiff could prove damages which he sustained by reason of the misconduct.
In Lommasson, supra, 106 P.2d at 1091-92, the Supreme Court of Montana refused to rescind a partnership agreement based on a partner's failure to carry out the duties and obligations of the partnership. The court decided that the voluntary formation of the partnership should not be rendered void by subsequent remote acts which arguably affect the discharge *201 of the business. The court found the application of rescission particularly inappropriate because the partnership business had been carried on for a substantial period of time. See also Proctor and Gamble Co. v. Powelson, 288 F. 299, 303 (2d Cir.1923); Stryker v. United States, 95 F.2d 601, 605 (10th Cir.1938).
In Dalury v. Rezinas, 183 A.D. 456, 459, 170 N.Y.S. 1045, 1049 (App.Div.), aff'd 229 N.Y. 513, 129 N.E. 896 (1918), the court held that an action at law did not lie to recover damages for conversion or fraud committed during the life of the partnership and determined that the only remedy available was an accounting. Rescission of the partnership agreement, ab initio, even as to only one partner, is all the more inappropriate where a partnership has become firmly established and has operated successfully for a number of years. Dissolution and an accounting are more appropriate remedies.

III.
I review plaintiff's contentions against this background of partnership principles. First, plaintiffs' claim that they are entitled to rescission based on failure of consideration has no merit. The measure of the partners rights and obligations is the partnership agreement. Hilton v. Hilton, 89 N.J. Eq. 182, 184, 104 A. 375 (E. & A. 1918). Here, the consideration for Smith's partnership interest was clearly stated at $6,000.00 which was paid at the time the agreement was signed. In exchange for this consideration Smith was to receive a 20% interest in the partnership. No argument was presented that his consideration was dependant on any promises or covenants not contained in the partnership agreement.
Next plaintiffs argue that they are entitled to rescission because Dean Smith misrepresented himself as a mortgage broker. Legal fraud or misrepresentation "consists of a material misrepresentation ..., made with knowledge of its falsity, with the intention that the other party rely thereon, and he does *202 so rely to his damage." United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 564, 483 A.2d 821 (App.Div. 1984), (citing Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257, 314 A.2d 69 (App.Div. 1973), aff'd 64 N.J. 197, 314 A.2d 68 (1974)); Jewish Center of Sussex County v. Whale, 86 N.J. 619, 625, 432 A.2d 521 (1981). In equitable fraud, knowledge is not necessary, but "the only relief that may be sought is equitable relief, such as rescission or reformation of an agreement." Ibid.
There is no genuine issue of material fact in this case as to the allegation of fraud. When questioned about whether Smith made any representation about his qualifications in mortgage financing, one partner said "he didn't have to, we knew he had the experience." Another colleague, referring to the period before Smith became a partner, said "I knew Dean's qualifications; I had worked with Dean for many years." Thus, plaintiffs' allegations of fraud are contradicted by their own deposition testimony. Furthermore, even assuming that a misrepresentation was made, no evidence was presented to prove that it was material, relied upon or that any damage resulted to the partnership.
Plaintiffs next seek to rescind the partnership agreement based on alleged material misrepresentations by Smith as to future services that he was to perform on behalf of the partnership. Plaintiffs allege that Smith failed to: (1) negotiate the acquisition of the interest of All American Life by A.D.S.; (2) obtain construction loans for the project; and (3) secure financing for the buyers of units.
Under New Jersey law, statements as to future events, expectations, or intended acts, do not constitute misrepresentations despite their falsity, if the statements were not made with the intent to deceive. Middlesex County Sewer Auth. v. Borough of Middlesex, 74 N.J. Super. 591, 605, 181 A.2d 818 (Law Div. 1962), aff'd 79 N.J. Super. 24, 190 A.2d 205 (App.Div. 1963). However, "a false representation of an existing intention, i.e., a false state of mind with respect to a future *203 event has been held to constitute actionable misrepresentation." Capano v. Borough of Stone Harbor, 530 F. Supp. 1254, 1264 (D.N.J. 1982) (construing Samatula v. Piechota, 142 N.J. Eq. 320, 323, 60 A.2d 86 (Ch. 1948)). In other words, "the defendant must have no intention at the time he makes the statement of fulfilling the promise." Ibid. Mere nonperformance is insufficient to show that the promisor had no intention of performing. Ocean Cape Hotel Corp. v. Masefield Corp., 63 N.J. Super. 369, 382, 164 A.2d 607 (App.Div. 1980).
In this case, plaintiffs have offered no evidence demonstrating that any statements by Smith were false at the time they were made or that he had no intention of fulfilling his promises. Even assuming that Smith failed to perform as charged, nonperformance by the promisor is not evidence of an intent to deceive. In any case, the evidence in support of the claim that Smith failed to perform is insufficient and unpersuasive. With respect to the acquisition of the interest that All American Life held in the project, that interest was in fact acquired by the partnership in 1985, several months prior to the time Smith became a partner. The allegation cannot now stand as a basis for the breach of an agreement that did not exist.
As to Smith's failure to obtain construction loans, financing was in fact obtained and a loan commitment was issued to the attention of Dean Smith in January 1987. The level of effort expended by Smith is irrelevant and does not constitute a false representation, failure of performance or consideration. The same is true with regard to the claim that Smith failed to obtain financing for unit buyers. No evidence was presented to demonstrate that Smith did not intend to assist unit buyers with financing. In deposition testimony, one partner conceded that "Dean was not deficient in finding end loans, he got end loans for several units." Another partner testified that he was unaware of any transaction lost because a buyer could not obtain financing. Thus, plaintiffs' contention that Smith failed to assist buyers in obtaining purchase loans is contradicted by *204 their own deposition testimony. Accordingly, there is no genuine issue of material fact on this claim.
Plaintiffs' final assertion is that Smith's repeated breach of his fiduciary duties warrants rescission. Specifically, they claim that Smith: (1) sought to divert a partnership unit for his personal use; (2) received a one% commission ($1,750.) from the buyer of a unit for which Smith obtained mortgage financing; and (3) maintained an economic relationship with another person named Carol Siroka, contrary to the best interests of the partnership. Plaintiffs' allegations amount to accusations of self-dealing. Once again, no evidence was presented to prove that any of these alleged breaches of fiduciary duties damaged, impaired or undermined the partnership in any manner so as to justify rescission. The assertion that Smith sought to divert a partnership unit for personal use is groundless. No unit was ever acquired by Smith, and in any case, this alleged misconduct occurred nearly six months before Smith became a partner.
As to the contention that Smith improperly received a $1,750 commission from a unit buyer, even if true, this allegation is insufficient to warrant rescission of the entire agreement and rescission of the partnership profits owed to Smith. Hollister, supra, 55 N.Y.S. at 374; Lommasson, supra, 106 P.2d at 1091-92. Proctor & Gamble, supra, 288 F. at 303. Instead, it would be fairer and more equitable to set aside the offending transaction subject to an accounting rather than void the entire agreement. See Abramson v. Davis, 100 N.J. Eq. 563, 564, 135 A. 774 (Ch. 1927), aff'd 100 N.J. Eq. 565 (E. & A. 1927); Pace v. Perk, 81 A.D.2d 444, 440 N.Y.S.2d 710, 716 (1981); Jennison v. Bierer, 601 F. Supp. 1167, 1178 (D.Vt. 1984).
Plaintiffs' remaining contention involving Carol Siroka is not supported by any evidence that Smith's dealing with her materially affected the partnership business. Plaintiffs' contentions amount to pure speculation about lost business. Had the partners concluded that Smith's activities posed an *205 economic threat to the partnership, and had they acted promptly, they could have repudiated the alleged offending transactions and filed for an accounting and damages. Partners who misappropriate partnership opportunities may be held accountable for those profits. See Johnson v. Buck, supra, 540 S.W.2d at 399; Prince v. Harting, 177 Cal. App.2d 720, 731, 2 Cal. Rptr. 545, 549 (1960); J.F. Ghent, Annotation, Partner's Breach of Fiduciary Duty To Co-partner On Sale Of Partnership Interest To Another Partner, 4 A.L.R.4th 1122 (1981).
In sum, there is insufficient evidence presented of fraud, failure of consideration or any impropriety that would justify rescission of the partnership agreement. Further, there was no evidence to prove that the alleged breaches by Smith undermined the purpose for which the partnership was originally established. Absent compelling circumstances, rescission of a partnership agreement is not warranted where the relationship of the parties and the discharge of their business obligations have matured to the point that it would be unjust and inequitable to rescind the agreement from its inception. After a three year period with the partnership involving the financing, construction and operation of several office buildings, and the distribution of substantial partnership profits to all the partners, it would be impractical to restore defendant to his original position with the degree of certainty necessary to arrive at an equitable result.

IV.
In addition to denying allegations of impropriety, Smith argues that rescission is particularly inappropriate because of plaintiffs' delay in presenting their claims. Plaintiffs should, therefore, be estopped by laches from rescinding the agreement or any transaction. Jersey Discount Co. v. Aetna Ins. Co., 128 N.J.L. 293, 295, 25 A.2d 506 (Sup.Ct. 1942). I agree.
During oral argument on the motion, it became apparent that plaintiffs had regarded Smith as a defaulting partner for sometime *206 but decided against any action so as not to financially jeopardize the construction project. The following colloquy is pertinent:
Court: Apart from laches, estoppel, and waiver, wouldn't this act [distributions of partnership shares] ratify the transaction?
Counsel: That certainly is an argument, but if you take it in the context of what is going on, you have to understand what the partnership is faced with, if it tackles a defaulting partner while the project is still under development ... you run into the wall known as dissolution. As soon as there is a partnership dispute, what you face is a dissolution of the partnership  All they could do is wind up their affairs at that particular time and the plans that everybody agreed were good, plans to develop the three condominium units go right out the window.
Court: So they made a business judgment, lets keep the partnership going even though we knew the guy is messing up.
Counsel: And we deal with it after the partnership has completed, what it was organized to do....
Despite knowledge of alleged self-dealing and failure to perform agreed upon services on behalf of A.D.S., plaintiffs, nevertheless, made Dean Smith a partner. Despite continued alleged breaches by Dean Smith of his fiduciary responsibilities and his misrepresentations, plaintiffs paid him approximately $238,000, on five separate occasions, over a period of three years. There is no question that plaintiffs were completely aware of Smith's claimed misconduct during the time they treated him as a partner and business associate:
Court: Did you not ratify those acts by the extension of partnership shares or distribution of partnership shares to him [Dean Smith] even after knowledge of these facts?
Counsel: There is no doubt that happened and as stated in the certification of Murray Abill, they frankly didn't know what to do until they came  until they consulted frankly with my office. (emphasis added).
While, plaintiffs admit that they ratified Dean Smith's acts, they contend that they were uncertain as to what action to take against him. However, this assertion is untenable since plaintiffs admitted that they were motivated by the desire to keep the partnership intact for financial reasons.
The doctrine of laches is an equitable principle based upon the maxim that equity aids the vigilant and not those who *207 slumber on their rights. It is defined as "neglect to assert a right or claim, which taken together with lapse of time and other circumstances causing prejudice to adverse party, operates as a bar in a court of equity." Black's Law Dictionary 787 (5th ed. 1979). Laches generally "consists of an unexplainable and inexcusable delay in enforcing a known right whereby prejudice has resulted to the other party because of such delay." Clark v. Judge, 84 N.J. Super. 35, 53, 200 A.2d 801 (Ch.Div. 1964), aff'd 44 N.J. 550, 210 A.2d 415 (1965); 9W Contractors, Inc. v. Englewood Cliffs, 176 N.J. Super. 603, 610, 1 N.J. Tax, 424 A.2d 461 (App.Div. 1980); Morgan v. Altman, 120 N.J.L. 16, 197 A. 724 (E. & A. 1938). Knowledge and delay are essential prerequisites to application of the doctrine of laches. Federal Trust Co. v. Taylor, 3 N.J. Super. 373, 376, 65 A.2d 640 (App.Div. 1949).
"Estoppel by laches" is defined as a failure to do something which should be done or to claim or enforce a right at a proper time. Hutchinson v. Kenney, 27 F.2d 254, 256 (4th Cir.1928). "Laches may work, or create an estoppel; its essence is estoppel." Burke v. Gunther, 128 N.J. Eq. 565, 575, 17 A.2d 481 (Ch. 1941); Giovacchini v. Teich, 133 N.J. Eq. 107, 30 A.2d 815 (Ch. 1943). Where one "knowing his rights ... takes no steps to enforce them until the condition of the other party has in good faith, become so changed that he cannot be restored to his former state, if the right then be enforced, delay becomes so inequitable and operates as an estoppel against assertion of those rights." M. & C. Creditors Corp. v. Pratt, 172 Misc. 695, 17 N.Y.S.2d 240, 265 (Sup.Ct. 1938), aff'd 281 N.Y. 804, 24 N.E.2d 482, 255 A.D. 838, 7 N.Y.S.2d 662 (1939). However, laches as a defense is not regarded favorably where the parties stand in a confidential relationship. Weisberg v. Koprowski, 17 N.J. 362, 378, 111 A.2d 481 (1955). Nevertheless, where as here, a partner is cognizant of fraud or misrepresentation and fails to promptly rescind the partnership agreement or transaction, and instead engages in conduct which assumes the validity of the partnership, then the agreement or *208 transaction may be deemed ratified. Arnold v. Hagerman, 45 N.J. Eq. 186, 196, 17 A. 93 (E. & A. 1888); Jones v. Gabrielan, 52 N.J. Super. 563, 576, 146 A.2d 495 (App.Div. 1958).
Here, the evidence is undisputed. The record shows that plaintiffs were aware of Smith's alleged improprieties during the construction phase of their project. They made a business decision not to take any action against Smith while the project was in progress. Over a period of several years, Smith represented himself as a partner of A.D.S. and received a number of distributed profits. In other words, despite allegations of failure to acquire construction loans, end loans for condominiums, misrepresentations as to qualifications, receipt of a kickback on a sale of a condominium unit and diversion of partnership profits, plaintiffs distributed partnership proceeds to Smith five times over a period of three years totaling $238,200.[1]
In this case plaintiffs elected to wait a substantial period of time before taking any action. In the interim, plaintiffs continued to compensate and treat Dean Smith as a partner, subjecting him to the same benefits and liabilities as those of plaintiffs. See N.J.S.A. 42:1-7(4), "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business...."; Farris v. Farris Engineering Corp., 8 N.J. Super. 475, 484, 73 A.2d 617 (App.Div. 1950), modified, 7 N.J. 487, 81 A.2d 731 (1951). After the development project and associated risks were completed, plaintiffs instituted this action. Plaintiffs cannot have it both ways: they cannot make a business judgment to delay dissolution for several years despite knowledge of improprieties, then seek rescission of the partnership agreement once economic gain is obtained.

*209 A party entitled to rescission on the ground of fraud may either avoid the transaction or confirm it; he cannot do both; and once he elects, he must abide by his decision. When he has discovered the fraud, or has been informed of facts and circumstances from which such knowledge would be imputed to him, he must thereupon act with diligence and without delay if he desires to rescind; and the transaction will be deemed ratified if he does any material act which assumes the transaction is valid....
[In The Matter of Vandersee Corp., 173 F. Supp. 217, 218 (D.N.J. 1959); See Rieder v. Scher, 674 F. Supp. 485, 487 (D.N.J. 1987) (acquiescence in signing promissory notes ratified misrepresentations of plaintiffs). c.f. Ajamian v. Schlanger, 20 N.J. Super.$ 246, 248, 89 A.2d 702 (App.Div. 1952).]
Rescission is an equitable remedy appropriate for summary judgment disposition as long as there is no genuine issue of material fact. Amer. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 268 A.2d 313 (Ch.Div. 1970). Rieder v. Scher, supra, 674 F. Supp. at 487. Plaintiffs in this case failed to act with due diligence in repudiating the allegedly offending acts. Instead, they accepted the benefits of the partnership and even ratified the partnership by paying partnership profits, thereby validating the partnership's existence.
Accordingly, plaintiffs are not entitled to rescission of the partnership agreement or any transaction involving Dean Smith. Therefore, they are not entitled to retain Smith's undistributed profits. Defendant's motion for partial summary judgment seeking release of his partnership profits is granted.
NOTES
[1] Plaintiffs distributed proceeds as follows: March 1987, $90,000.00; April 1988, $61,200; June 1988, $18,000; April 1989, $59,300.00; April 1989, $9,700.00.