**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1249
_____

JOHN LUSCKO,

Appellant

v.

SOUTHERN CONTAINER CORP.;
STEVEN HILL
_____

On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 06-3896)
District Judge:  Hon. William H. Walls

Submitted November 17, 2010

Before:  BARRY, CHAGARES, and VANASKIE, Circuit Judges.

(Filed: November 30, 2010)

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

John Luscko appeals the District Court's grant of summary judgment on his claims

that his employer, Southern Container Corp., committed fraud, constructively discharged

him, breached his employment contract, and discriminated against him.  For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write for the parties' benefit and recite only the facts essential to our disposition.  John Luscko, a salesperson in the box industry, began his employment with Regal Corrugated Box Co. ("Regal") in 1989, receiving a five-percent commission on his sales.  When the owner of Regal passed away in 2004 and the company began to experience financial problems, Luscko decided to explore employment opportunities at Southern Container Corp. ("Southern").  According to Luscko, he remained at Regal when Southern balked at his request to remain at a five-percent commission rate.  In 2005, however, Regal was sold to Southern through an asset purchase agreement.

As part of the sale, Southern acquired the Regal business and accounts.  The asset purchase agreement provided for an initial payment as well as payments based on a percentage of Southern's sales to former Regal accounts.   In the agreement, Southern invited four individuals of Regal's sale staff, including Luscko, to enter into employment contracts whereby Southern promised to maintain their five-percent commission rates for three years.  Hesitant to commit to employment at Southern, Luscko signed the contract after his fears were minimized by the statements of Southern's executive vice-president, Steven Hill.  Hill stated that Luscko would be treated "exactly" like at Regal, that he would personally take care of any problems Luscko had, that Luscko's accounts were "good" and "important" to Southern, and that the transition would be smooth.  Hill believed that Southern could easily absorb the plants and services of Regal and that,

2

ultimately for Luscko, employment at Southern would be better than at Regal. According to Luscko, Hill during this discussion about his employment inquired whether Luscko felt too old to sustain his then-level of productivity.

Luscko's employment agreement permitted him to continue to sell to his former Regal accounts in addition to any newly established accounts, provided Luscko was in compliance with Southern's policies in regards to price, terms, charges, deliveries, and products offered. Southern was expressly given absolute discretion to refuse to accept any orders or ship any products. In return, Luscko was provided with a commission rate of five percent for all sales on prior accounts. The employment contract explicitly stated that the contract constituted the entire agreement between the parties and that there were no other agreements or representations made with respect to the contract. Without discussing the arrangement with Southern, Luscko signed the contract without reading it.

Despite all intentions, the transition period for Southern was difficult. Southern had unexpected delays due to problems transferring data from Regal to Southern, inefficiencies at Regal's plants, and acts of sabotage against machinery at Regal's sites. This mayhem caused Southern's business and employees to suffer tremendously. During this transition, Southern failed to process submitted orders or to make timely or accurate deliveries of orders. Luscko complained that during this period, Southern set onerous credit terms on his accounts, failed to provide him with commission statements, converted some of his accounts to house accounts, and provided poor customer service to his clients and to him. Southern admits that the transition was a nightmare, and while problems were eventually resolved, it cost Southern lost accounts and sales.

3

As a result of this chaotic transition, Luscko's sales on his primary accounts decreased and so did his commissions. Southern was unable to provide support to Luscko for any of his new accounts as it was struggling with its current business. By April 2006, Luscko's sales had dropped from $5.5 million to $400,000, and his commissions had been reduced to $20,000 from $275,000. Luscko never lodged any complaints with Southern. However, on April 19, 2006, Luscko quit without notice. No one was hired to replace Luscko.

On June 29, 2006, Luscko filed suit in the Superior Court of New Jersey. On August 17, 2006, Southern removed the action to the District Court. The District Court on December 23, 2009 granted Southern's summary judgment motion. On January 20, 2010, Luscko filed a notice of appeal.

## II.

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In conducting our analysis, we must view the record in the light most favorable to Luscko, and must draw all reasonable inferences in his favor. See Vitalo, 399 F.3d at 542; Fed. R. Civ. P. 56(c). To defeat summary judgment, however, Luscko must "produce admissible

4

evidence containing 'specific facts showing that there is a genuine issue for trial.'"

Vitalo, 399 F.3d at 542 (quoting Fed. R. Civ. P. 56(e)).[1]

### III.

Luscko contends that Southern's service problems during its transition period were calculated actions intended to avoid making future payments to Regal in accordance with the asset purchase agreement. He alleges that Southern was only interested in eliminating Regal as a competitor and never had any intention of promoting and preserving Regal accounts. Further, Luscko believes that Southern purposely delayed his orders and ruined his accounts in an effort to deprive him of his commission and Regal of future payments. As a result, Luscko maintains that Southern committed fraud, constructively discharged him, breached his employment contract, and discriminated against him.

### A.

Luscko alleges that Southern, through Hill, fraudulently induced him into signing his employment agreement. In New Jersey, to sustain a claim for fraud, a plaintiff must show that the defendant made (1) a material misrepresentation of present existing or past fact, (2) with knowledge of its falsity, (3) made for the purpose of inducing the plaintiff to rely on it, and (4) which results in plaintiff's reasonable reliance. Lightning Lube v. Witco Corp., 4 F.3d 1153, 1182 (3d Cir. 1993) (citing Jewish Ctr. of Sussex County v. Whale, 432 A.2d 521, 524 (N.J. 1981)). A plaintiff seeking monetary damages must also show that the defendant acted with scienter. Id.

---

[1] The parties do not dispute that New Jersey law applies in this diversity action and we agree with the District Court that New Jersey law governs this dispute.

5

As a general rule, fraudulent inducement cannot be predicated upon representations which involve things to be done in the future. Anderson v. Modica, 73 A.2d 49, 53 (N.J. 1950). However, "where a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud." Lo Bosco v. Kure Eng'g, 891 F. Supp. 1020, 1031 (D.N.J. 1995) (citing Phoenix Techs., Inc. v. TRW, Inc., 834 F. Supp. 148, 152 (E.D. Pa. 1993), and Notch View Assocs. v. Smith, 615 A.2d 676, 682 (N.J. Law Div. 1992)). Intention may be derived from circumstantial evidence such as utter recklessness and implausibility of the statement in light of subsequent acts and events, a showing that the promisor's intention to perform was dependent upon contingencies only known to him, or evidence showing at the time of the promise that the promisor could not or would not fulfill the promise. Ocean Cape Hotel Corp. v. Masefield Corp., 164 A.2d 607, 613 (N.J. Super. Ct. App. Div. 1960). Mere non-performance of a promise is insufficient to show that a promisor had the requisite intent not to perform. Notch View Assocs., 615 A.2d at 682 (citing Ocean Cape Hotel Corp., 164 A.2d at 614).

Luscko alleges that that Hill made two future promises which induced him to sign his employment contract: (1) Hill stated that the Regal accounts were "good" and "important" to Southern; and (2) Hill was silent as to his accounts' credit terms, quantity limits and delivery dates. In making such claims, Luscko, however, has failed to provide evidence that Hill had no intention of fulfilling his promises at the time they were made. Luscko only points to the problems encountered during the transition period and his

6

unsubstantiated theory regarding Southern's ultimate intent without identifying any facts showing Hill knew of the subsequent problems that Southern would endure or that in fact Luscko's accounts were not "good" or "important" to Southern. The evidence shows that the transition period for the two companies was extremely difficult and that such challenges were unexpected to Southern. Further, it is unclear how Hill's silence on the credit terms, quantity limits, and delivery dates could constitute an affirmative promise by Hill, particularly in light of the fact that the express terms of the employment contract provided Southern with the ultimate discretion in those areas. Hence, there is no evidence in the record to show that Hill made a material misrepresentation of present existing or past fact which he knew to be false to induce Lusko to sign his employment contract.

B.

In addition to his allegations of fraud, Luscko maintains that Southern constructively discharged him by interfering with his accounts. To prevail on a claim for constructive discharge, a plaintiff must show that the "employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Muench v. Twp. of Haddon, 605 A.2d 242, 249 (N.J. Super. Ct. App. Div. 1992) (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)). A plaintiff must support a claim for unlawful retaliation or other violation of public policy before he can maintain a claim for constructive discharge. Gallo v. Princeton Univ., 656 A.2d 1267, 1276 (N.J. Super. Ct. App. Div. 1995). Additionally, an employee has an "obligation to do what is necessary and reasonable in order to remain

7

employed rather than simply quit." Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611, 627 (N.J. 2002).

Luscko argues that Southern created unreasonable wage restrictions in violation of N.J. Stat. Ann. § 34:11-56a3 and that his unreasonable wage was a condition so "intolerable" that he was forced to resign. We find this argument unpersuasive because Luscko's wage as a salesperson was not oppressive or unreasonable nor has Luscko provided evidence that Southern knowingly permitted his reduction in wage so as to make the conditions intolerable. The evidence does show that the unforeseen difficulties during the transition period caused all the Regal salespeople to experience sharp declines in sales and revenues as Southern struggled to execute orders properly. However, there is no evidence that Southern knowingly permitted these conditions so as to affect Luscko's wages and to force his resignation. In fact, the decline in sales revenues was limited to the transition period and the record indicates that Southern worked diligently to remedy the problem. Hence, Luscko has not satisfied the elements of a constructive discharge claim to survive summary judgment.

C.

Luscko also alleges that Southern breached his employment contract because he was unable to enjoy the fruits of his contract due to Southern's failure to support his sales efforts. To sustain a breach of contract claim, a party must show that (1) a valid contract exists between the plaintiff and the defendant, (2) the defendant breached the contract, and (3) the plaintiff incurred damages as result of the breach. Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing Coyle v.

8

Englander's, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). A contract is considered breached "where one party to a contract, by prevention or hindrance makes it impossible for the other to carry out the terms [of the contract]." Wolf v. Marlton Corp., 154 A.2d 625, 628 (N.J. Super. Ct. App. Div. 1959) (citation omitted). Additionally, a contract is considered breached when a party breaches the implied covenant of good faith and fair dealing by engaging in acts in bad faith or inequitable conduct in the performance of a contractual obligation. Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 228 F.3d 275, 288 (3d Cir. 2000).

Luscko argues that his employment contract as a whole was breached because he was prevented from making sales. However, after reviewing the provisions of the contract and its overall purpose, we conclude that Luscko was not prevented from making sales during this time period, but that due to the difficult transition period, sales were restricted or delayed as permitted by the terms of his contract with Southern. As part of the agreement, Luscko agreed to comply with Southern's policies in regards to price, terms, charges, deliveries and products offered, and gave Southern absolute discretion in regards to accepting and shipping any orders. The employment agreement did not obligate Southern to make deliveries or process orders within a certain time frame in order to promote Luscko's sales. Furthermore, no evidence has been provided that Southern acted in bad faith or with an improper motive to deprive him of the fruits of his

9

employment agreement.  As such, Southern did not breach its employment contract with

Luscko.[2]

IV.

Accordingly, we will affirm the District Court's grant of summary judgment to

Southern.

---

[2] Luscko also raises a claim that Southern discriminated against him due to his age.  We reject this argument outright.  The record is devoid of evidence that age played a role in or motivated changes to his employment or that younger salespeople were treated more favorably than Luscko.  Beyond an allegation by Luscko that Hill inquired about whether he was "getting too old" before he signed his employment contract, there is no evidence that his age was a factor in any aspect of his employment with Southern.